Coordinator, Judge Golomb, and Judge Bussard to speak tonight. I'd like to focus my discussion to the Court today on the effect of what I believe is a very broad-reaching decision by the Supreme Court in the Nick case, where that Court found that once there is a taking, there is an irrevocable right to the constitutional remedy of just compensation. The Court also found that just compensation is a money damage reward, and that the constitutional violation of a taking continues until just compensation is paid. What does that have to do with sovereign immunity? Well, sovereign immunity, I believe that post-Nick, that the courts have to deal with the tension that I see between the Fifth Amendment's right to just compensation, if you give on one hand, and then on the other hand, sovereign immunity under the Eleventh Amendment is to take that away. But we have the Fourteenth Amendment under the Due Process Clause, which says that just compensation must be paid by a state for a taking. The Supreme Court has repeatedly said that for there to be, for plaintiff in your situation to overcome sovereign immunity, it's got to be under the Fourteenth Amendment, and Congress has to pass an abrogation statute, or the state has to pass a waiver, or has to otherwise waive. Are you saying that that's been undermined by Nick? But I'm saying that sovereign immunity should be an effective abrogation in instances where a state is depriving just compensation, but that the Fourteenth Amendment, by passing that, the state's consented to be obligated to pay just compensation. Well, it could be, I'm going on the consent that the state of Mississippi has, by agreeing to pay just compensation under the Fifth Amendment, when the Fourteenth Amendment was ratified, those obligations are binding on the state. The state also itself requires that it must pay just compensation under the Fifth Amendment, and that's a standard in this particular case. State courts are perfectly competent to enforce that, too, aren't they? State courts are perfectly competent to enforce that. Yes, sir. And that, but in this particular case, the state courts reviewed the inverse condemnation procedure that Baypoint followed, and at the end of that inverse condemnation case, the court, their finding was there was a taking, that there was a new use for the property that was not previously authorized, but instead of paying just compensation, the result was a nominal amount of $500 for the taking of 14.3 acres. That clearly isn't just a bridge or deny the right of a property owner to just compensation. Why isn't your remedy to go to the Supreme Court from the Mississippi Supreme Court's ruling? We did. We did, and the court said, or two justices, Justice Gorsuch and Justice Thomas said that the decision rendered by the Mississippi Supreme Court to limit compensation is in conflict with the teachings of the U.S. Supreme Court that you can't use state statutes to limit compensation as Mississippi did in this situation. That's the issue. But the state court is the court that the Constitution says handles cases against the state. Well, Nick says that an inverse condemnation process has to, if the process, the post deprivation procedure provides for just compensation, then there's no need for the federal courts to be involved. But the converse is true. If the state court process does not yield or does not provide due process, which in this type of case means just compensation, that constitutional right under the self-executing character of the takings clause, that violation continues until just compensation is paid. In this particular case, there were two options for paying a takings, a nominal sum or just compensation. So by definition, Bay Point was denied just compensation because it was paid a nominal amount based on the application of two particular statutes under Mississippi law. Those were the statutes that troubled the justices when that writ application was applied, was made. And those two, those two statutes are 65-1-123 subsection 5, which says an easement for highway purposes shall be released when that property is no longer needed for that highway purpose. What was established in this post deprivation procedure is that the original easement on this property was limited to a particular highway purpose. The jury found that the new uses on that property were not highway purposes, which is in effect a taking of a new highway easement, even if you assume the original easement still exists. And under this case, under this court's ruling in Severance v. Patterson, the taking of a new easement constitutes an unreasonable, I'm sorry, unlawful seizure and can be, and constitute a takings claim that is not subject to sovereign immunity under the ex parte Young exception because government officials are on Bay Point's property without authority. The only authority that allows them to remain on that property or to be on that property for these new uses would be with the payment of just compensation, which clearly has not happened here. And I think this court needs to address in a post-NIC world what happens with property owners who were once told before Williamson or after Williamson County, you need to go to state courts before you have a federal claim. NIC now says that claim doesn't ripen after you do the procedure, that right emanates from the Constitution at the moment of the taking, and is it remedied until just compensation is obtained? Is there something in NIC that you could point me to that discusses sovereign immunity? No, no. You're making a predictive statement that the Supreme Court, having issued its decision in NIC, believes that the next step is to then say there's sort of a Fifth Amendment takings exception to the sovereign immunity doctrines. It would be in order to harmonize the holdings of NIC, which dealt with a township which is not entitled to sovereign immunity. It went into a long discussion about the federal government and the Tucker Act, and it said that the Tucker Act is not the Constitution, that's not a prerequisite in order to file your takings claim against the federal government. The takings claim emanates from the Constitution itself, and it said, this is from the Jacobs— The Equal Protection Clause, obviously, is in the Constitution, and I assume you would agree that Congress still needs to abrogate if it wants to—needs to abrogate sovereign immunity if it wants to enforce the Equal Protection Clause against the states? That is true, but what's unique about— So is the takings clause more powerful than the Equal Protection Clause now? That's—I believe that the takings clause has a unique character, as the Court described in NIC, a self-executing character that, on one hand, identifies the violation and then provides for the only constitutional remedy, which is just compensation. The Equal Protection Clause doesn't have such a specific remedy in the constitutional text itself. And the remedy that you're seeking is, in fact, just compensation? Well, we also have asserted this unlawful seizure, as I've mentioned. We have asserted 1983 actions as well. But after—the way I read NIC, the Court has said that just compensation must be paid in order to remedy the takings violation. And they've applied it to the federal courts. They went on to say that the reasoning in Jacobs, which is what I discussed a little bit earlier about Tucker, should apply to the states as well. That reasoning should apply to the states as well. In other words, the constitutional right emanates from the takings clause. I guess what I'm just trying to figure out in terms of the remedy is, are you asking—here are the two things I can think of that you might be asking for. One is sort of the backwards-looking remedy of just compensation. You've taken my property. I deserve money. What I got was not enough. I want money. Okay. That's one. Another would be the forward-looking relief of, you're on my property. Get off. We've asked for both, Your Honor. Yes. You're arguing that it should not have been taken in the first place, no matter what? Well— That it's not for public use? You know, what has happened is, today there is a physical occupation of Baypoint's property. We do have two remedies. One is the state can pay just compensation, and they're welcome to use it as they see fit, or they can get off. And, you know, that— Tell me about that argument. The— Because the government obviously can take under eminent domain, but it can only take for public use. Are you arguing that this is not for public use? No, it is for public use, but the public use was identified to be a non-highway purpose by the jury. That is—and the only—the only right that the state had to use that property— What if they gave you the dollar amount you wanted? Would you then be—would your clients then say, you know what, that's all we wanted. We just wanted compensation. Or are they saying, I don't care. I love my property. Get off. I don't care what pay—what amount you pay me. A trillion dollars, we're not taking it. Yeah, in this particular case, just compensation would be satisfactory. This is not—you know, this property doesn't have any particular sentimental value, as would be in some other instances. Right. But in this particular—in this case, just compensation was actually paid—it was identified by the state itself to an adjoining landowner as $26 a square foot. It was identified to be $26 a square foot in this case or in this litigation, but the state, instead of applying that and paying that, they decided we're going to go with a Plan B. We're going to say we still have the right to use this property because of the original 1952 easement. And just one moment on that. That was for the construction and operation of Toll Project Number One across the Bay of St. Louis. That bridge was severely damaged by Hurricane Katrina. They decided that they weren't going to repair it. They removed it. That purpose ended. New purposes, new uses of the property were taken by the state of Mississippi, and that's what the jury found, that these new uses were not authorized by the original highway easement. Restarts the whole process of what the compensation is and the whole taking. Is that your position? Pardon me, Your Honor. In other words, after Katrina, are you claiming that you restart the process of expropriating this property for the new purpose? The issue is whether or not the easement continues. Is that correct? Yes, sir. That's important because under the common law at the time when the easement was granted, if the purpose of the easement terminates, so does the easement. And that's what happened here. The state had the right to rebuild that project according to the plans and specs, like it said in the condemnation order. That's not what they chose to do. They chose to build a new highway, new design, new location. And one other thing, when they put the new highway in the new location, it left about 7.9 acres that the state expressly declared to be outside the right-of-way of the new highway and then built a recreational park on that property. So even if the worst case, Bay Point, the state had the right to rebuild Highway 90, it then took the next step and declared 7.9 acres of it outside of what they needed for that highway. But the jury found the easement, the highway easement, was still on that property also. They did. So, I mean, you can't start all over because the easement's already there, as the jury found. But they're not using the property for that easement. I understand, and the jury warranted you damages for that. But the state has not fulfilled its statutory obligation to release that property from the easement on its minutes, which is a mandatory obligation under 65.1.123, subsection 5. And the other thing that they did is they built a recreational park on property that is not publicly owned. Bay Point is the fee title owner. That's not in dispute. They've built this park on what is not publicly owned property. And that taking must be compensated with just compensation. Thank you. You've reserved five minutes for rebuttal. Excuse me. Mr. Minor. I'm Wilson Minor from the Mississippi Attorney General's Office. On behalf of the appellees, may it please the court. This report correctly dismissed this suit for lack of subject matter jurisdiction based on the 11th Amendment immunity. Plaintiff is attempting to collaterally attack a state court judgment that was rendered in its favor, in which it received $500 as just compensation for the taking of its property. Plaintiff appealed that judgment to the Mississippi Supreme Court and lost. And then it filed a cert petition with the Supreme Court of the United States, which was denied. The plaintiff claims now that it was entitled to sue the state of Mississippi for $16 million because a jury in state court didn't award it the value of the land that the state took. It's well settled that the 11th Amendment bars any claim against the state or any state official in their official capacity for damages. This court has repeatedly held that the Fifth Amendment taking clause does not abrogate state sovereign immunity under the 11th Amendment. We cited those cases in our brief, including the Morrow case, the McMurtry case, Gutersloh. And as Judge Ho pointed out, Congress has not enacted a statute in this context which has abrogated state sovereign immunity. Section 1983 does not abrogate 11th Amendment immunity. As for the Nick case, there's no mention anywhere that its holding has any effect on sovereign immunity. The defendant in that case was a town, and local governments like towns and counties are not entitled to 11th Amendment immunity. All that the Nick case establishes is that your takings claim is right when as soon as the government takes the property and indicates that it's not going to pay just compensation. At that point, now you can file in federal court as opposed to state court. When the plaintiff filed suit, at that time, Williamson County required you to file your inverse condemnation claim in state court. You couldn't go to federal court until you exhausted your state court remedies, which they did. They won. The jury awarded them $500 for the value of their land, and now they're trying to collaterally attack that judgment. And that's why setting aside the issue of damages, which is clearly barred by the 11th Amendment, their request for declaratory relief is also barred because all they're trying to do is basically get a declaratory judgment that we owe them just compensation. That's what they want. They're not asking for any kind of declaratory relief that there's any ongoing violation of federal law here. Is there any claim in district court that this is not for public use? No, in the state court? Or at any point? Did they appoint everyone? No, they've never claimed they're not allowed to do this. It's not for public use. They've always conceded that you can take the property. Right. The fight has been about how much it's worth. All they want is for the state to pay them what they believe is just compensation. But the jury already determined what the value of this land was that the state took, and we've already paid that amount. Now they're just trying to re-litigate that. And as Judge Osherman said, what they're basically trying to do is get a declaratory judgment nullifying the state court judgment so they can now ask for $16 million in damages in federal court. And that's clearly retrospective relief that's barred by the 11th Amendment. The counsel opposite also suggested that they're seeking a declaratory judgment that the state is improperly on the land. That's not the declaratory relief that's actually in the complaint. And there's no request for injunctive relief to eject the state from the land. What they asked for is a declaratory judgment that the defendants have enforced these statutes, and, well, the state courts in Mississippi have also enforced these statutes, to deny them just compensation. So they basically just wanted a declaratory judgment that they haven't been paid just compensation. That's what Papa San, the Supreme Court decision says, is tantamount to an award of damages, but it's denominated in different terms. So they're not asking the state to remove the park. And the other thing is, when the state, when the jury found that the state had taken their property and we paid them the value of their land, now the state has a right to use that land for that park. We paid for that right. The idea that the state is improper, illegally seizing their land, continuing to seize it, it's completely inconsistent with the jury verdict that they obtained, which says we paid $500. That was the value of the land. We paid for it. You're just haggling over price at this point. Yes, we're not at, this is not like the severance case, where the plaintiff was, the beach eroded and the beach went up to her house, and Texas claimed that they could impose a public beach easement, basically where the house was, so she couldn't even use the house, and the public could use basically the beach right next to the house. That plaintiff filed suit in federal court for prospective declaratory injunctive relief. They did not seek damages. And the plaintiff also did not go to state court and file a takings claim and win and get awarded money for the value of the property. That case is completely distinguishable. And what they're basically trying to do here is just collaterally attack a state court judgment that they won. And that's clearly prospective relief. I mean, retrospective relief. Excuse me. I mean, the declaratory relief also doesn't say exactly, but it doesn't require the state to do anything other than pay damages. It's not designed to end an ongoing violation of law. It doesn't tell the state to do something or not do something. It just requires it to pay damages. As for the issue of whether they sued the individual defendants in their individual capacities, it's clear that from the caption of the case that they expressly stated that they sued each of these individual defendants in their official capacities. But going beyond that, looking to the substance of the complaint, the complaint does not allege what each of the individual defendants did to cause the taking of the property. Instead, the complaint refers to the defendants collectively and to the commission as the actor who took the land. There's no allegation that any of the defendants engaged in a conspiracy or this was in retaliation for some reason. And the bottom line is the state took the land. None of these individual defendants took the land. So it's clear from the face of the complaint, I would think, that the plaintiff never sued these individual defendants in their personal capacities. Also, the state is the real party of interest because any judgment against these individual defendants would necessarily have to be paid by the state because of the substantial sum that the plaintiff is seeking. The state would have to indemnify them. Otherwise, people would be very reluctant to go work for the Highway Commission or the Transportation Commission or the Department of Transportation if they could be sued in their personal capacity for taking claims. Now, if the court is not, even if the court finds that they've alleged an ongoing violation of law, the relief that they seek is still borrowed by the 11th Amendment because it's retrospective. As Judge Ozervan found, they're basically asking for a declaratory judgment that the Mississippi Supreme Court was wrong, the state trial court was wrong, and the jury was wrong in finding that this permanent highway easement was still attached to the land, and that by virtue of that easement still being attached to the land, it reduced the value of the land to basically a nominal sum, which is what the jury found. So they're basically asking for a declaratory judgment that all of that was wrong and illegal under the Constitution, and that's clearly retrospective relief. Judge Ozervan basically said that they're basically complaining about an injury that was caused by the jury verdict and by the state court rulings, and they're inviting the federal court to basically review and reject those rulings and findings. Although we didn't raise it in the court below, we didn't brief it, but what Judge Ozervan found at the end of his opinion is very similar to the Rooker-Feldman Doctrine, and I think the court could, if the court finds that the 11th Amendment doesn't bar all of their claims, it could affirm on the alternative basis that the plaintiff's claims are barred by the Rooker-Feldman Doctrine because they're complaining of an injury caused by a state court judgment, and they're asking a federal court to review and reject the judgment. That's what Judge Ozervan found, although he analyzed it under the 11th Amendment and found that that kind of relief is retrospective. The court could also affirm that Judge Ozervan found that he didn't have subject matter jurisdiction because basically they're trying to collaterally attack a state court judgment. Also, all of their claims in this case are inextricably intertwined with that state court judgment, and they could have brought all those claims in the state court case. Of course, the fact that they didn't, we also contended in the district court that because they could have brought all the claims that they filed in the federal court are barred by the Doctrine of Recidivism. So in summary, they're asking for money damages which are clearly barred by the 11th Amendment from the state. Nick does not abrogate sovereign immunity, and Nick does not provide that the 5th Amendment itself abrogates sovereign immunity. Only Congress can abrogate sovereign immunity under Section 5 of the 14th Amendment by enacting a statute, which the plaintiff has incited a single federal statute that would abrogate state sovereign immunity, and the state did not abrogate sovereign immunity by ratifying the 14th Amendment. It has to be a state statute that abrogates state sovereign immunity. And the relief the plaintiff seeks is clearly retrospective. It relates to past acts of the defendants and past acts that were taken by the courts of Mississippi and the jury. They asked the federal court to declare those past acts as violation of their constitutional rights. It's clearly retrospective, and the relief they seek is not designed to stop an ongoing violation of federal law. It's designed to compensate them for money that they think they should have received in the state court case. If your honor don't have any questions. Thank you. Mr. Lambert, you've reserved five minutes. The nature of the relief that Baypoint is seeking is not just retroactive in nature with regards to the taking that took place when the property was used after Katrina. Baypoint is seeking a determination that the statutes that are being applied by the Mississippi agencies, and the ones I named before 65-1-1-23-5, where they are required to release an easement once it's not needed for highway purposes, doesn't say that they're allowed to use it for non-highway purposes if they want to. It says if it's not being used for the highway purpose, it must be to violate that statute. Let me ask for clarification here. In your previous suit, when you all filed suit in state court seeking compensation, did you make the argument that, by the way, you don't want compensation at all, you want the property back completely, or did you only seek compensation in that case? We only sought just compensation in the state court. Are you judicially stopped at this point from seeking anything else? And you went to court asking the state to give you money? That's correct. So aren't you now limited to asking for money? Well, at that time, we were in the Williamson County... No, but you could have said, look, this is an invalid taking completely. We're not here for money. We're here for, get off my property, trespass. Right. Do I understand correctly, you did not seek that? We did not seek... You didn't argue that it's not a public use? That is correct. We did not argue that. You wanted money. It was an inconsistent use to what had been previously authorized, and we posited that the original easement had terminated when the state... No, fair enough, but that's basically an argument over how much money you're entitled to. Right. Right. As I understand what you're telling me, you did not argue that this property cannot be taken at all? We did not argue that. Why are you not judicially stopped then at this point? Well, the constitutional claims that we brought in federal suit, those all arose after the state court inverse condemnation case became final, and it became clear that just compensation was not paid, and it was not paid because of the way the statutes were applied. There was no way for us to anticipate that until the decision was rendered, and once that happens, then the right to continue or to pursue those constitutional claims that arose at that point, that's what led us to file the suit in federal court. Okay. Counsel stated that the state of Mississippi has paid $500, which was the value of the land, so they have the right to use it as a park. They have not paid for the value of the land. That's the whole point. The property, the just value, the just compensation has not been paid. If they take a new, let's assume the old easement still exists. I contend it only exists because the state officials are refusing to follow their mandatory obligation under 65.1.123 subsection 5 to release it. If the state takes another easement under the Severance v. Patterson case, the court recognized that taking another easement even on top of an existing easement can constitute a taking. Yeah, but that issue was tried. The state court ruled against you on that. They said the easement is still in effect. I mean, you can't undercut that, can you? The court, the reason that reached that result was because the court said that the commission could only speak through its minutes. But the commission has not followed its statutory duty, just like it has violated the other statute that we have challenged, 65.151. You can't build that public park unless it's on publicly owned property. Those statutes are being violated today and will be seeking, in addition to the just compensation claim that arises from the Fifth Amendment, that there be declaratory judgment and that an order be issued that the state must follow its statutes in order to make sure that, as the Justices Gorsuch and Thomas were concerned about, they are using, Mississippi is using its statutes to limit compensation being paid for a taking. And that constitutional violation continues until just compensation is paid. If the federal court's not open, oh, I'm sorry. Thank you. We have your argument. Thank you, Your Honor. The case is submitted and this concludes our proceedings for the week.